[No. D044857. Fourth Dist., Div. One. Dec. 1, 2004.]

JESSICA A. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and III.

## COUNSEL

Timothy A. Chandler, Alternate Public Defender, James J. McMahon and Gaylord Stewart, Deputy Alternate Public Defenders, for Petitioner Jessica A.

Robert Quinones, Jr., and Judith Klein for Petitioner Jesus O.

No appearance for Respondent or Minors.

John J. Sansone, County Counsel, Susan Strom and Lisa M. Maldonado, Deputy County Counsel, for Real Party in Interest.

## OPINION

**AARON, J.—** ■ Jessica A. (the mother) and Jesus O. (the father) seek review of juvenile court orders terminating their reunification services and setting a hearing under Welfare and Institutions Code section 366.26.[2] The mother contends there is not substantial evidence to support the juvenile court's finding that she did not make substantive progress with the provisions of her case plan. The father contends substantial evidence does not support the finding that he was offered or provided with reasonable reunification services. Both parents assert that the court abused its discretion in finding there was no substantial probability their children could be returned to them by the 12-month hearing date. The mother also maintains that the court

---

[2] All statutory references are to the Welfare and Institutions Code.

erroneously looked to the date previously set for the 12-month review hearing, rather than a date six months from the time of the six-month review hearing, in determining whether there was a substantial probability that the children would be returned to the parents. In the published portion of this opinion we conclude that the trial court properly looked to the date previously set for the 12-month hearing to decide whether there was a substantial probability the children would be returned to the parents. In the unpublished portion, we reject the parents' other claims of error.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2003, the San Diego County Health and Human Services Agency (Agency) petitioned on behalf of one-year-old Jessie O., and his newborn sister, Y.O., under section 300, subdivision (b), alleging the parents used methamphetamine and marijuana; Y.O. was born with a positive toxicology for methamphetamine; the mother admitted using methamphetamine; and the father admitted using marijuana. At the detention hearing on November 3, the court found that a prima facie showing had been made, detained the children and found the father to be the presumed father.

The social worker reported that the parents were motivated to receive services. They were assessed by the Substance Abuse Recovery Management System (SARMS) and each began attending a drug program. On December 19 the parents submitted to the allegations of the petitions and the court found the allegations true. On January 5, 2004, the court ordered the children placed in foster care and ordered the parents to undergo psychological evaluations and to participate in SARMS, parenting classes and counseling.

In a report dated June 24, 2004, the social worker reported that the mother had enrolled in SARMS on November 7, 2003, but that she had made poor progress during November; she attended SARMS programs and drug tested in early December, but failed to appear for testing during the last two weeks of December, and in January and February. On March 15 the court terminated the mother from SARMS. The social worker emphasized to the mother the importance of her participating in a drug treatment program, and on April 8 the court ordered the mother to reenroll in SARMS. She did so on May 4, but failed to appear for testing on two dates that month. On May 28 she tested positive for marijuana and was referred for detoxification, but she did not appear at the detoxification facility. On June 7 the mother entered the KIVA program, but left after two days. The social worker again stressed to her the importance of her participating in drug treatment.

The social worker reported that the father enrolled in SARMS on November 6, 2003, and that his first two drug tests were positive for marijuana. By January 2004 he had stopped testing and participating in SARMS, and on March 15 the court terminated him from the program. On April 8 the court ordered him to reenroll. He did so on May 5, but participated only sporadically in May and June.

The social worker also reported that although the court had ordered the mother to have individual therapy, and the social workers had given her referrals to therapists both in October and in February and had urged her to begin counseling in May, by June she still had not started therapy. The father also had been provided referrals, but had not begun counseling. He told the social worker he had made a therapy appointment for June 11.

The social worker stated that the parents maintained they were participating in parenting classes through their drug treatment programs, but neither parent provided a certificate of completion. The social worker opined that, given the parents' inconsistent participation in services, it was unlikely they could reunify with the children within the next six months. She therefore recommended terminating services.

In an addendum report dated June 24, the social worker reported that the mother had begun a residential drug treatment program on June 16, and the father had attended two sessions with a therapist and said he was taking his services more seriously. On July 19 the father entered a residential drug treatment program.

At the six-month review hearing on August 10, the social worker testified that during the first six months of the reunification period the mother had undergone a psychological evaluation, but had not participated in a parenting class or counseling, and that her participation in SARMS had been inconsistent. She reenrolled in SARMS in May, and in June started a 90-day residential program. The social worker testified that the father had undergone a psychological evaluation, but that he had not begun therapy until June, and had participated only sporadically in SARMS. He reentered SARMS in June and had recently entered a residential program. The social worker opined there was no probability the children could be returned to the parents by the 12-month date.

The mother testified that on June 16 she entered the CRASH residential program. She said she had chosen this program because her SARMS worker had recommended it, it was a hard program, and it taught participants how to deal with problems without resorting to drug use. She said she had taken parenting classes and that she would soon receive her parenting certificate. She said she was not in therapy because she needed to put as much time as she could into her drug treatment. She also said that she had looked for a therapist, but that it was hard to get an appointment and her telephone use at CRASH was limited.

The social worker testified the staff at CRASH had informed the social worker that arrangements could be made for the mother to leave the program if she had a therapy appointment.

The court noted that the parents had only recently begun to participate actively in their case plans and stated that their participation did not constitute sufficient evidence upon which the court could base a finding that there was a reasonable likelihood "the children would be returned at the end of a—our next six month period, which is now only four months away." The court terminated reunification services for both parents and set a section 366.26 hearing.

The parents petitioned for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 39.1B.) This court issued an order to show cause, the Agency responded and the parties requested oral argument.

DISCUSSION

I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

*The Trial Court Properly Looked to the Date Set for the*
*12-month Review Hearing in Determining Whether There*
*Was a Substantial Probability the Children Would be*
*Returned to the Mother.*

The mother asserts that the court applied an incorrect time frame in determining whether or not there was a substantial probability the children

---

*See footnote, *ante*, page 636.

could be returned to her care. Specifically, she claims the court erred in concluding at the six-month review hearing that there was no probability the children would be returned to her care by the 12-month hearing, which at that time was only four months away. She maintains that the court should have considered instead whether it was likely the children could be returned to her within six months of the date on which the six-month review hearing was held.

The mother relies on *Dawnel D. v. Superior Court* (1999) 74 Cal.App.4th 393 [87 Cal.Rptr.2d 870], in which the reviewing court held that the juvenile court should have determined whether there was a substantial probability a child could be returned to her mother's custody within six months of the date of the six-month hearing, rather than by the date previously set for the 12-month hearing. (*Id.* at pp. 398–401.)

Section 366.21, subdivision (e) provides in part: "If the child was under the age of three years on the date of the initial removal, or is a member of a sibling group described in paragraph (3) of subdivision (a) of Section 361.5, and the court finds by clear and convincing evidence the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial probability that the child . . . may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing."

In *Dawnel D. v. Superior Court, supra,* 74 Cal.App.4th at page 398, the court noted: "At the six-month review hearing for a child who was under the age of three when she was initially removed from her parent's custody, the court must determine if 'there is a substantial probability that the child . . . may be returned to his or her parent . . . within six months. . . .' (§ 366.21, subd. (e).) If the court finds such a probability exists, it must order an additional period of services and schedule a 12-month review hearing. (*Ibid.*) In scheduling the 12-month review hearing, the court must consider the time limits set forth in subdivision (a) of section 361.5."

Section 361.5, subdivision (a)(2) provides: "For a child who, on the date of initial removal from the physical custody of his or her parent or guardian, was under the age of three years, court-ordered services may not exceed a period of six months from the date the child entered foster care." Section 361.5, subdivision (a)(3) states in part "court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian . . . ."

■ Despite the clear language in section 361.5 subdivision (a)(2) indicating that the period of court-ordered services is measured from the date on which the child entered foster care, the *Dawnel D.* court held that section 366.21, subdivision (e) requires the juvenile court to consider the likelihood that the child will be returned to the parent within the next six months, rather than by the date set for the 12-month hearing, which had previously been scheduled for a date 12 months after the jurisdictional hearing took place. The court stated, "We conclude the plain language of the statute demonstrates the Legislature's intent that the court look at a full six-month period, regardless of when the twelve-month period would expire in a particular case . . . ." (*Dawnel D. v. Superior Court, supra,* 74 Cal.App.4th at p. 399.) The *Dawnel D.* court concluded that its interpretation of the statute was consistent with the time limits set forth in section 361.5 because, under the facts of that case, allowing an additional six months of services would not extend the dependency period beyond the maximum 18-month period. (*Dawnel D. v. Superior Court, supra,* at p. 399.)

In our view, the *Dawnel D.* court's interpretation of section 366.21, subdivision (e) is inconsistent with the overall statutory scheme which sets strict time limits for reunification and for establishing permanent plans for dependent children in order to achieve stability for the children in an expeditious manner.

■ A "fundamental objective of California's dependency system [is to] minimiz[e] delay in the proceedings." (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1163 [111 Cal.Rptr.2d 310].)[3] In *In re Christina A.,* the

---

[3] In *In re Christina A., supra,* 91 Cal.App.4th 1153, the reviewing court was concerned with a lack of consistency between sections 366.21, subdivision (e) and 366, subdivision (a)(1), which refer to the six-month review hearing as being held six months after the initial *disposition* hearing as compared with section 361.5, subdivision (a)(2), which provides that court-ordered services for a child who was under the age of three at the time of removal shall not exceed a period of six months from the date the child entered foster care, which is calculated as the " 'earlier of the date of the *jurisdictional hearing* . . . or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent . . . .' " (*In re Christina A., supra,* at p. 1157, quoting § 361.5, subd. (a).) The court concluded that the six-month hearing must be held no later than six months from the

court noted that the California Legislature "has recognized a dependent child's 'need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements' " (*In re Christina A., supra,* at p. 1162, quoting § 352, subd. (a)). When a court has determined that removal is necessary because a child is at risk in parental custody, " 'children and parents should receive appropriate legal representation, *time-limited and clearly focused protective and/or reunification services,* and permanency planning at the earliest possible stage for those children who cannot live safely with their family.' " (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446 [24 Cal.Rptr.2d 751, 862 P.2d 751], quoting Sen. Select Com. on Children & Youth, Sen. Bill No. 1195 Task Force Rep. on Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (Jan. 1988) p. 2.) The *Dawnel D.* court concluded that at the six-month review hearing, the court is to determine whether there is a substantial probability the child will be returned to the parents within six months of the date of that hearing, even where the six-month review hearing has been delayed. The *Dawnel D.* court determined that this was consistent with the time frames set forth in section 361.5, subdivision (a) because in the circumstances of that case, doing so would not extend the reunification period beyond the maximum 18 months. (*Dawnel D. v. Superior Court, supra,* 74 Cal.App.4th at p. 399.) However, under this reasoning, in cases in which the six-month review hearing has been delayed, the 12-month hearing would not take place, as statutorily mandated, 12 months from the date on which the child entered foster care, but rather, could occur as late as 18 months from the date on which the child entered foster care. This would enable parents to circumvent the stringent requirements they would otherwise have to meet in order to have services continued to the 18-month date (§ 366.21, subd. (g)), and would delay placement of the children, thus thwarting the intent of the dependency statutes.

The mother appears to contend that the court's looking to the date previously set for the 12-month hearing, rather than a date six months from the date on which the six-month hearing was held in determining whether there was a substantial probability the child would be returned to her custody, was in some way prejudicial to her. However, we note that reunification services commence on the date of the jurisdictional hearing, so that by the

---

earlier of the date of the jurisdictional hearing or the date that is 60 days after the date of initial removal. However, the court affirmed the order scheduling the review hearing in that case because the date of the hearing had come and gone while the appeal was pending. (*In re Christina A., supra,* at pp. 1164–1165.)

time set for the 12-month hearing, the mother would have received a full year of services—which is precisely what is envisioned by the dependency statutory scheme.

Here, the juvenile court had previously set the 12-month review hearing for a date 12 months from the date of its jurisdictional finding, as is required by section 366.21, subdivision (f). The setting of this date for the 12-month hearing is consistent with the statutory provision that reunification services may be extended to the time of the 12-month hearing. Nowhere in the statutory scheme is there any indication that if the six-month hearing is held more than six months from the date of the jurisdictional hearing the court should reset the date for the 12-month hearing. Nor is there anything in the statutes to suggest that the court should consider whether there is a likelihood of return within six months from the actual date of the six-month hearing, regardless of when that hearing may take place.

■ Statutory provisions "must be construed with reference to [the] whole system of dependency law, so that all parts may be harmonized. [Citations.] We also are required to construe a statute so as to effect the apparent legislative intent and avoid absurd results." (*In re David H.* (1995) 33 Cal.App.4th 368, 387 [39 Cal.Rptr.2d 313].) ■ The requirement of section 366.21, subdivision (e) that if the court finds a substantial probability of return within six months it "shall continue the case to the 12-month . . . hearing" is clearly based on the assumption that the six-month review hearing was held in a timely manner, and that an additional six months remain in the time period from the date on which the jurisdictional hearing was held to the date set for the 12-month review hearing. A delay in holding the six-month review hearing should not provide grounds to permit the parties to circumvent the clear intent of the dependency scheme by extending other time limitations contained in the statutes.

We disagree with the holding of *Dawnel D. v. Superior Court., supra,* 74 Cal.App.4th 393, to the extent it requires the juvenile court to consider whether there is a probability of return within a full six months from the date on which the six-month hearing is actually held, rather than by the date set for the 12-month hearing in accordance with section 366.21, subdivision (f). The court in this case did not err in considering whether there was a substantial probability the children would be returned by the date previously set for the 12-month review hearing.

## DISPOSITION

The petitions are denied.

McDonald, Acting P. J., and Irion, J., concurred.