51 Cal.Rptr.3d 463 (2006)
145 Cal.App.4th 125
TONYA M., Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Los Angeles County Department of Children and Family Services, Real Party in Interest.
No. B193167.
Court of Appeal of California, Second District, Division Four.
November 28, 2006.
*464 Helen Yee, under appointment by the Court of Appeal, for Petitioner.
Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Tracey Dodds, Senior Deputy County Counsel, for Real Party in Interest.
Children's Law Center of Los Angeles, Kristen N. Walker for Minor.
MANELLA, J.
This case addresses the time period a juvenile court must consider at the six-month review hearing held pursuant to Welfare and Institutions Code section 366.21, subdivision (e), when determining whether return of a child under the age of three to his or her parent is likely. The statute instructs the court, if it finds a "substantial probability" that the child may be returned "within six months," to "continue the case to the 12-month permanency hearing." Disagreeing with Dawnel D. v. Superior Court (1999) 74 Cal.App.4th 393, 87 Cal.Rptr.2d 870 and agreeing with Jessica A. v. Superior Court (2004) 124 Cal.App.4th 636, 21 Cal.Rptr.3d 488, we conclude that in determining whether such probability exists, the court need not look beyond the date of the 12-month permanency hearing.

FACTUAL AND PROCEDURAL BACKGROUND
Petitioner Tonya M. is the mother of I.D., born in October 2005. Real party the Department of Family and Children's Services (DCFS) filed a petition under Welfare and Institutions Code section 300 on behalf of I.D. a few days after his birth due to a positive toxicology screen for methamphetamine and symptoms of drug withdrawal.[1] Petitioner admitted to having used drugs throughout her pregnancy, up to within two days of I.D.'s birth. She also informed the caseworker that she suffered from manic depression and had been suicidal as a teenager due to sexual abuse by her older (adoptive) brother. She spent her teenage years in a group home. Petitioner agreed to enroll in substance abuse and parenting classes, and to otherwise cooperate with DCFS.
By the time of the combined jurisdictional and dispositional hearing on November 28, 2005, DCFS had lost contact with petitioner. Petitioner called once, on November 21, 2005, and made an appointment for the next day, but failed to appear. She also failed to appear at the hearing itself. The court found the allegations of drug abuse to be true and ordered that reunification services be provided to petitioner, including monitored visitation.[2]
*465 DCFS was still unable to locate or contact petitioner when the court held a review hearing in February 2006. I.D. was placed with prospective adoptive parents in March 2006.
As the whereabouts of petitioner and I.D.'s father were unknown, DCFS was required to complete a lengthy due diligence process prior to every hearing where their rights could be affected.[3] The six-month review hearing (§ 366.21, subd. (e)) was scheduled for May 1, 2006, and continued to May 30 because the parents had not been given proper notice and DCFS had not established due diligence. When May 30 arrived, the hearing date was again continued, to June 26, for the same reason.
On June 13, 2006, the caseworker received a call informing her that petitioner was in custody. On June 26, DCFS received a letter indicating petitioner was participating in the Los Angeles County Drug Court Program through MELA Counseling Services. According to the letter, the in-custody portion of the program began May 26, and petitioner was scheduled to be released to a residential treatment program on July 5. Petitioner appeared at the continued six-month review hearing on June 26, and the matter was put over for a contested hearing on July 24, later continued to August 16.
Prior to the hearing, the caseworker reported that petitioner had been associating with I.D.'s father, which violated her probation because he was still using drugs. At the time, petitioner was residing with a friend and was on a waiting list for a bed in a residential drug program, while attending an outpatient drug program. MELA reported that petitioner had been admitted to the program on July 13; had attended group counseling sessions, missing five of 23 scheduled; and had tested negatively for drugs in July and August, having missed two scheduled tests and been excused from three others due to hospitalization. She had also missed some daily AA/NA meetings and had agreed to attend additional meetings to make up for the lapse. Her counselor considered her to be "in compliance with program requirements." Petitioner had also enrolled in a parenting program through MELA, with an anticipated start day of August 24 and completion date of November 2.
At the August 16, 2006 contested six-month hearing, both DCFS and the minor's attorney advocated termination of reunification services. Petitioner testified that she had participated in the Impact Drug and Alcohol Treatment Program. The program started on May 26. She began with MELA after her release from custody on July 12 or 13. She last used drugs on April 28, the date of her arrest. All her drug tests had been negative since April 28. One month prior to her April arrest, after being detained, petitioner had attempted the MELA program, but left after two weeks.
Petitioner visited I.D. on August 10, 2006. She sat with him, fed him, played with him, and changed his diaper. This was the only time she had visited him since his detention. She had made previous efforts to obtain visitation, beginning after her July 2006 release from custody. Initially, the foster parents were unavailable to bring the child for a visit. When a visit was finally arranged, petitioner missed it because she went to the wrong office. Petitioner testified that when I.D. was first detained, she was made to feel hopeless by *466 the caseworker, who told her she would never get her son back. She decided to straighten her life out because she did not want her son to be adopted due to her childhood experience.
The caseworker testified that she was assigned to the case on December 13, 2005. The first time she had any contact with petitioner was on June 14, 2006, after petitioner's case manager called about petitioner being in custody. Later, petitioner's drug rehabilitation counselor informed the caseworker that petitioner had been assigned to the Impact one-year drug program, which she started in June.
The parties stipulated that if petitioner's drug rehabilitation counselor were called, she would testify that "[petitioner] had been attending her program regularly"; had been "doing very well in her program[,] showing a lot of motivation"; and was "in compliance with the program." The counselor would have further testified that if petitioner "ke[pt] up the good work" she could "complete her program in six months."
After hearing the evidence, the court found by "[a] preponderance of the evidence" that "return of [I.D.] to the physical custody of [petitioner] would create a substantial risk of detriment to the safety, protection, physical and emotional well-being of [I.D.]" and that DCFS had provided reasonable services. The court further found "by clear and convincing evidence" that although petitioner had made "some progress" to alleviate the problems that led to I.D.'s removal, her progress was "minimal." The court specifically found that petitioner had not regularly and consistently visited I.D. and that "even if [she] had visited every week since [her release from custody], this court still could not make a finding that [she] has consistently and regularly visited with [I.D.]." Finally, the court found that there was little likelihood that I.D. would be returned to petitioner "by November the 28th, 2006, which would be the [366].21[ (f) ] date or the 12-month [review] date," because petitioner had not "demonstrated the capacity and ability both to complete the objectives of her treatment plan and to provide for [I.D.'s] safety, protection, physical and emotional well-being and special needs." The court ordered reunification services terminated and set a section 366.26 hearing to consider termination of parental rights for December 12, 2006. This writ petition followed.

DISCUSSION
According to section 366.21, "[a]t the review hearing held six months after the initial dispositional hearing, the court shall order the return of the child to the physical custody of his or her parent ... unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent ... would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e).) In making this determination, the court is to "consider the efforts or progress ... demonstrated by the parent ... and the extent to which he or she availed himself or herself [of] services provided." (Ibid.) The parent's failure "to participate regularly and make substantive progress in a court-ordered treatment plan" is "prima facie evidence that return would be detrimental." (Ibid.)
A special rule applies at the six-month hearing stage if the minor was under the age of three on the date of the initial removal: "If ... the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 [to terminate *467 parental rights] within 120 days." (§ 366.21, subd. (e).) This provision further states: "If, however, the court finds there is a substantial probability that the child, who was under the age of three years on the date of initial removal ... may be returned to his or her parent ... within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing." (Ibid.)
Section 361.5, subdivision (a)(2), governs the permissible length of reunification services, and contains a similar rule applicable to minors under the age of three. It provides: "For a child who, on the date of initial removal from the physical custody of his or her parent or guardian, was under the age of three years, court-ordered services shall not exceed a period of six month from the date the child entered foster care." A child is "deemed to have entered foster care on the earlier of the date of the jurisdictional hearing ... or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian." (§ 361.5, subd. (a)(3).) The same subdivision also provides that "court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian" if it is shown at the six and 12-month review hearings "that the permanent plan for the child is that he or she will be returned and safety maintained in the home within the extended time period." (Ibid.)
Petitioner does not challenge the court's finding that return of I.D. to her custody on the date of the six-month review hearing was not possible. Petitioner contests the findings that (1) reasonable reunification services had been provided; (2) she failed to participate regularly and make substantive progress in the court-ordered reunification programs; and (3) there was no substantial likelihood that I.D. would be returned to her before the 12-month review hearing. Petitioner seeks to overturn the court's decision based on these findingsto terminate reunification and set a section 366.26 hearing to consider termination of parental rights. Both DCFS and the minor's attorney oppose her petition.
"[W]ith regard to the sufficiency of reunification services, our sole task on review is to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (Angela S. v. Superior Court (1995) 36 Cal.App.4th 758, 762, 42 Cal.Rptr.2d 755.) The only basis for petitioner's contention that reunification services were inadequate is the caseworker's failure to facilitate visitation between petitioner and I.D. from June 13, 2006, when the caseworker learned petitioner was in custody, to August 16, when the review hearing was held. It is clear that an incarcerated parent is entitled to reasonable visitation and that failure to order visitation on the part of the court or to facilitate visitation on the part of DCFS can lead to a finding that reunification services were inadequate. (See, e.g., In re Precious J. (1996) 42 Cal. App.4th 1463, 1476-1480, 50 Cal.Rptr.2d 385; In re Monica C (1995) 31 Cal. App.4th 296, 306-308, 36 Cal.Rptr.2d 910; In re Brittany S. (1993) 17 Cal.App.4th 1399, 1406-1407, 22 Cal.Rptr.2d 50.) In those cases, however, the parents' incarcerated status was a factor from the beginning of the proceedings and continued for a substantial period of time. Here, petitioner was not in custody at the time of the jurisdictional and dispositional hearing when the court and DCFS formulated the reunification plan, and there was no reason *468 to believe that incarceration would be an issue. The sole reason for the absence of visitation during the first six months after I.D.'s detention was petitioner's failure to contact DCFS or seek out the visitation permitted by the court's order. When the caseworker was advised of petitioner's incarceration in mid-June 2006, there was no immediate indication that petitioner desired visitation. Moreover, as petitioner was scheduled to be released in early or mid-July, there was no time or apparent need to devise a new" visitation plan. Petitioner actively sought visitation with I.D. for the first time after her release. The record reflects that in the month between petitioner's release and the review hearing, the caseworker arranged two visits. Petitioner missed one due to her own failure to appear at the right location. On this record, we do not perceive any basis to fault DCFS for failing to facilitate visitation.
With respect to petitioner's challenge to the court's findings that her participation in reunification was minimal and that there was no substantial likelihood that I.D. would be returned within the appropriate period, we will uphold a juvenile court's finding regarding continuation of reunification services if there is any substantial evidence to support it. (In re Christina A (1989) 213 Cal.App.3d 1073, 1080, 261 Cal.Rptr. 903.) There is no dispute petitioner accomplished nothing of significance and had effectively abandoned I.D. between October 2005 and her arrest in April 2006. She seeks to prevail based on her actions after that date. She testified she was placed in a drug program for prisoners at the end of May, but presented no evidence concerning the nature of the program or the types of services or counseling it offered. She did not begin the MELA program until July, nine months after I.D.'s detention and a mere one month before the review hearing. Her decision to participate in the MELA program was not voluntary, but the result of impending criminal charges. Although petitioner had apparently been drug free for four months, three of those months she had spent incarcerated. According to the stipulation, petitioner's drug counselor believed she could potentially complete the program within six months. However, other evidence indicated that MELA had a one-year program consisting of three four-month phases, the first two of which were live-in; there was no evidence MELA was prepared to give her credit for participation in the earlier program. The court's findings of minimal progress and lack of substantial likelihood that I.D. would be returned within six months were fully supported by the evidence. (See Cresse S. v. Superior Court (1996) 50 Cal. App.4th 947, 954-955, 58 Cal.Rptr.2d 56 [court need not extend reunification services merely because parent has engaged in a last-minute "flurry of activity"].)
Moreover, petitioner's argument is based on the faulty premise that the court was required to use a time frame of six months from the August 2006 review hearing in considering whether there was a substantial likelihood that I.D. would be returned to her. In other words, she believed the court should have given her the benefit of a full six-month period and addressed whether return was possible by February 2007. The court instead based its finding on the inability to reunite by the "12-month [review] date" of November 28, 2006three months beyond the review hearing.[4]
*469 Petitioner's contention is based on Dawnel D. v. Superior Court, supra, 74 Cal. App.4th 393, 87 Cal.Rptr.2d 870. In Dawnel D., as in the present case, the six-month review hearing had been delayed for various reasons. It was finally held nine months after the jurisdictional hearing, just three months before the scheduled 12-month review hearing. In determining whether there was a likelihood of reunification with the parent, the juvenile court looked at the time remaining before the 12-month review hearing. The Court of Appeal reversed, holding that, in undertaking this determination, the juvenile court must begin its calculation on the date of the six-month review hearingeven if such hearing took place more than six months after the date of the jurisdictional hearingand give the parent the benefit of assuming six additional months to achieve reunification. The court based its decision on "the plain language" of section 366.21, subdivision (e), which the court believed "demonstrates the Legislature's intent that the court look at a full six-month period, regardless of when the twelve-month period would expire in a particular case." (74 Cal.App.4th at p. 399, 87 Cal. Rptr.2d 870.)
We do not believe the court in Dawnel D. correctly interpreted the statute. Its holding is contradicted by the formal rule adopted by the Judicial Council setting forth the juvenile court's responsibilities at the six-month review hearing. Rule 1460(f)(1)(E) of the Rules of Court states that the juvenile court may set a hearing under section 366.26 within 120 days of the six-month review hearing if "the child was under the age of three when initially removed and the court finds by clear and convincing evidence that the parent has failed to participate regularly and make substantive progress in any court-ordered treatment plan, unless the court finds a substantial probability that the child may be returned within 6 months or within 12 months of the date the child entered foster care, whichever is sooner...." (Italics added.) "[T]he formal rules the Judicial Council adopts that interpret a statute ... are entitled to a measure of judicial deference" and "will be overturned only if ... clearly erroneous." (Sara M. v. Superior Court (2005) 36 Cal.4th 998,1014, 32 Cal.Rptr.3d 89,116 P.3d 550.)
Moreover, another court, Jessica A. v. Superior Court, supra, 124 Cal.App.4th 636, 21 Cal.Rptr.3d 488, looked at the same provisions more recently and "disagree[d] with [Dawnel D.] to the extent it requires the juvenile court to consider whether there is a probability of return within a full six months from the date on which the six-month hearing is actually held, rather than by the date set for the 12-month hearing in accordance with section 366.21, subdivision (f)." (Id. at p. 645, 21 Cal.Rptr.3d 488.) The court in Jessica A. instead concluded: "The requirement of section 366.21, subdivision (e) that if the court finds a substantial probability of return within six months it `shall continue the case to the 12-month ... hearing' is clearly based on the assumption that the six-month review hearing was held in a timely manner, and that an additional six months remain in the time period from the date on which the jurisdictional hearing was held to the date set for the 12-month review hearing. A delay in holding the six-month review hearing should not provide grounds to permit the parties to circumvent the clear intent of the dependency scheme by extending other time limitations contained in the statutes." (Id. at p. 645, 21 Cal.Rptr.3d 488.) The court noted that parents would not be prejudiced by its interpretation of the statute: "[Reunification services commence on the date of the jurisdictional hearing, so that by the time set for the 12-month hearing, *470 the mother would have received a full year of serviceswhich is precisely what is envisioned by the dependency statutory scheme." (Id. at pp. 644-645, 21 Cal. Rptr.3d 488.) To interpret it otherwise "would enable parents to circumvent the stringent requirements they would otherwise have to meet in order to have services continued to the 18-month date [citation], and would delay placement of the children, thus thwarting the intent of the dependency statutes." (Id. at p. 644, 21 Cal.Rptr.3d 488.)
After reviewing the statutory provisions, we conclude that a proper interpretation of section 366.21, subdivision (e) cannot be accomplished by relying on its "plain language," because the statute contains an obvious ambiguity. The statute instructs the juvenile court at the six-month review hearing to consider whether there is a "substantial probability" that the child will be returned to the parent "within six months" and, at the same time, instructs the court if it makes such a finding to "continue the case to the 12-month permanency hearing." In an ideal world, the six-month review hearing would be held precisely six months after the jurisdictional hearing, and there would be no discrepancy between the two provisions. As a practical matter, however, many six-month review hearings are delayed for a month or more, resulting in fewer than six months remaining before the appointed 12-month review hearing date. (See § 366.21, subd. (f).) Therefore, the two provisions must be reconciled.
"An appellate court's role in interpreting statutory language is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. Statutes are not construed in isolation, but must be read with reference to the entire scheme of law of which the statutes are part so that the whole can be harmonized and retain effectiveness. If statutory language is susceptible to more than one interpretation, courts must adopt the meaning that conforms to the spirit of the statutory scheme and reject that which would result in absurd consequences unintended by the Legislature. In applying these principles, courts must keep in mind the object to be achieved, and the evil to be prevented, by the legislation." (In re Christina A. (2001) 91 Cal.App.4th 1153, 1162, 111 Cal.Rptr.2d 310.) A guiding principle behind the dependency statutes recognized by the Legislature is "a dependent child's `need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.'" (Ibid., quoting § 352, subd. (a); see In re Marilyn H. (1993) 5 Cal.4th 295, 308, 19 Cal.Rptr.2d 544, 851 P.2d 826 [noting that the Legislature in enacting the dependency statutes "recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be limitation on the length of time a child has to wait for a parent to become adequate"].)
The references in section 366.21, subdivision (e) to "six months" and to continuing the matter to "the 12-month permanency hearing" if the court makes a finding that there is a substantial probability the child will be returned to the parent, can be harmonized only if we presume the Legislature believed the six-month review hearing would take place in a timely fashion and the 12-month review hearing would be scheduled within one year after the jurisdictional hearing. (See In re Jessica A, supra, 124 Cal.App.4th at p. 645, 21 Cal. Rptr.3d 488.) To construe the statute as petitioner advocates would circumvent the "clear intent" of the provisionto hold parents of young, highly adoptable children to a strict schedule of compliance and cooperation and minimize the time the child spends in foster care limbo. (Id. at *471 p. 645, 21 Cal.Rptr.3d 488.) Accordingly, we conclude that the Legislature intended the juvenile court to base findings under section 366.21, subdivision (e) on the parents' having until the 12-month hearing date to complete the reunification plan and regain custody. Here, petitioner did nothing for the first six months, and if not for DCFS's difficulty in establishing due diligence and complying with service requirements, reunification services would have been terminated in May 2006. By the August hearing date, petitioner had been afforded three additional months to comply with the plan and prove her capability as a parent. She was able to complete only a fraction of the plan. The court did not err in ruling that petitioner would not be able to reunify with I.D. if given additional services, using the time until the 12-month review hearing as its standard, rather than six months from the date of the six-month review hearing.

DISPOSITION
The petition for writ of mandate is denied.
EPSTEIN, P.J., and WILLHITE, J., concur.
NOTES
[1] All statutory references herein are to the Welfare and Institutions Code.
[2] Allegations of mental and emotional problems, including "depression" and "suicidal ideation," were stricken.
[3] I.D.'s father, Edgar D., did not take part in reunification services and is not a party to this appeal.
[4] See § 361.21, subd. (f) ("The permanency hearing shall be held no later than 12 months after the date the child entered foster care, as that date is determined pursuant to subdivision (a) of Section 361.5".)