Filed 7/15/14  C.L. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| C.L.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A141537<br><br>(Contra Costa County<br>Super. Ct. No. J13-00968) |

**INTRODUCTION**

C.L., mother of G.L., petitions this court for extraordinary relief from the juvenile court's order of April 4, 2014 terminating her reunification services and setting a permanency planning hearing. (Welf. & Inst. Code, § 366.26)[1]  Mother contends the court abused its discretion in terminating her reunification services because real party in interest, the Contra Costa County Children and Family Services Bureau (CFSB), failed to prove by clear and convincing evidence that she failed to visit with G.L. or failed to participate regularly and make substantive progress in a court-ordered treatment plan. She also argues CFSB failed to prove termination of services was in G.L.'s best interests.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

After careful consideration of the record and the parties' contentions, we deny petitioner's request for extraordinary relief on the merits and affirm the juvenile court's orders. We also deny mother's request for a stay of the permanency planning hearing.

**STATEMENT OF HISTORICAL AND PROCEDURAL FACTS**

Minor G.L. was born in August 2013 while mother was incarcerated. CFSB took custody of G.L. from the hospital and placed him in foster care on August 17. Mother had two other children in the dependency system, D.L. and A.L. Mother's reunification services as to those children had been terminated for failure to comply with the case plan, and a section 366.26 hearing was set.

A petition pursuant to section 300, subdivisions (b) and (j), was filed in the current case on August 20, 2013 alleging mother had a chronic and ongoing substance abuse problem that impairs her ability to safely parent her child (allegation b-1); she was currently incarcerated with an unknown release date, making it impossible for her to provide care to her child (allegation b-2); and she had an open dependency case for the child's two half-siblings, in which reunification services had been terminated August 12, 2013 for noncompliance with her case plan (allegation J-1).

G.L. was detained the next day. Mother appeared in custody at the detention hearing.

At the uncontested jurisdiction hearing held on August 30, 2013, mother was no longer in custody, having been released two days earlier. She was in a residential treatment program. Allegation b-2 was dismissed, and mother pleaded no contest to allegations b-1 (ongoing substance abuse problem) and J-1 (termination of reunification services for dependent siblings). The court found the allegations true, declared the minor a dependent child, and set a disposition hearing for September 27, 2013.

On September 27, 2013, CFSB requested a two-month continuance to further assess mother's "commitment to recovery and gaining control of her life." The CFSB social worker, Valerie Memnon, acknowledged that given mother's lack of efforts toward

reunification with her two older children, she could have recommended that no reunification services be offered mother with regard to G.L. However, she opted instead to give mother an opportunity to demonstrate her capacity to change. The court continued disposition to November 22, 2013.

The disposition report drafted by Memnon for the November 22, 2013 hearing recommended offering mother reunification services. Mother had been in her treatment program since her release from jail on August 28 and was participating in all the recommended services offered through the program. Mother had twice-monthly supervised visits with G.L. and was loving, attentive, and nurturing with him. However, she tended to spend her time during visits taking photos of the baby to send to the men who might be G.L's father and, at one visit, spent time inquiring about paternity tests and child support. Memnon redirected mother's attention to her visit with G.L. The court granted mother reunification services and unsupervised visits to be arranged by CFSB. A six-month review hearing was set for May 5, 2014.

On January 30, 2014, CFSB filed a Request to Change Court Order (§ 388) asking the court to terminate family reunification services on account of a change in circumstances. The request alleged that on the night of December 14 through the morning of December 15, 2013, mother drank a half pint of vodka and was terminated from her treatment program for being intoxicated. In addition, on December 13, 2013, mother's parental rights were terminated as to the minor's half-siblings. The request further alleged that mother had failed to make a reasonable effort to treat the problems that led to the removal of the siblings and therefore termination of family reunifications services would be in the best interests of G.L.

A hearing on the section 388 motion was set for March 5, 2014. A supplemental report in support of the motion drafted by Memnon explained that continuing family services was not in the minor's best interests for the following reasons: On December 15, 2013, mother's counselor at her treatment program reported that mother had been

3

discharged from the program after returning from a "weekend pass" at 5:15 a.m. apparently under the influence of alcohol; "her speech was slurred, her eyes were red, and she was unable to focus." In addition, mother had a strong odor of alcohol about her. The counselor expressed surprise at mother's ability to return to the program given she was "so severely drunk." Mother tested positive for alcohol and was discharged. Mother was provided referrals to other treatment programs.

On December 16, mother called Memnon to report she had been discharged from her treatment program for drinking a pint of vodka over the weekend and returning "drunk" to the program. Mother said she was depressed and had a bad weekend with her boyfriend. Memnon provided the telephone numbers of two residential treatment programs and encouraged her to re-enroll. Mother said she already had the numbers and would call them.

On December 18, mother's scheduled visit with G.L. was cancelled because she arrived 40 minutes late and appeared to Memnon to be under the influence, based on her appearance and behavior. Mother denied she was under the influence of any legal or illegal substance and stated she drank a pint of vodka a few days earlier. Told she would have to submit to drug testing immediately, mother admitted she had last used methamphetamine on December 16. She attributed her relapse to the termination of her parental rights to her two other children on December 13, and fights with her current and former boyfriends.

While mother was in the treatment program, she generally did not miss any drug tests and tested negative for drugs 14 times between September 25, 2013 and January 14, 2014. She tested positive for drugs seven times between August 8, 2013 and September 20, 2013. After her relapse, she tested positive for amphetamines on December 18, January 8, 22, and 30, 2014.

Mother was arrested and taken into custody on January 29, 2014. According to information obtained from the California Law Enforcement Telecommunications System

4

(CLETS), mother was arrested on charges of second degree robbery (Pen. Code, § 211), a probation violation (Pen. Code, § 1203.2), possession of a controlled substance (Health & Saf. Code, §§ 11377, subd. (a)), and possession of drug paraphernalia. (Health & Saf. Code, § 11364.)

Based on the foregoing, Memnon concluded that in light of mother's lack of "insight into how her addiction affects the lives of her children" and her lack of progress toward ameliorating the problems that led to the dependency , CFSB could no longer support offering reunification services to mother. Therefore, CFSB recommended terminating services and setting the 366.26 hearing.

On April 4, 2014, mother appeared at the section 388 hearing out of custody. The court read and considered the report prepared for the March 5 hearing and took judicial notice of the siblings' court files. Through counsel, mother objected to CFSB's recommendation and informed the court she had been accepted into a treatment program in Berkeley, California that provided all of the components specified in her case plan. She did not present any evidence. Counsel indicated mother would file a section 388 motion at the appropriate time. The court granted CFSB's section 388 motion, terminated reunification services, and set the section 366.26 hearing for August 1, 2014. Mother filed a timely notice of intent to file a writ petition.

## DISCUSSION

Mother contends the court abused its discretion in terminating her reunification services because CFSB failed to carry its burden under section 388, subdivision (c) of showing by clear and convincing evidence that mother (1) failed to visit the minor; or (2) failed to participate regularly and make substantive progress in a court-ordered treatment plan. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) We disagree.

Appellate review of a juvenile court's exercise of discretion is deferential. The test is whether the court's action exceeded the bounds of reason. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) In making this determination, we view the evidence in the light

5

most favorable to the challenged action. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) Likewise, the standard of review for orders terminating reunification services and setting a permanency planning hearing under section 366.26 is whether substantial evidence supports the challenged orders. (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216 [review of orders under § 361.5]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 [review of orders under § 366.26].) "Under this standard of review we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses. [Citation.] We must resolve all conflicts in support of the determination and indulge all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact." (*In re Albert T., supra,* 144 Cal.App.4th at p. 216.) If there is substantial evidence in the record to support the challenged orders, then the appellate court must affirm.

Here, the minor was under the age of three at the time of removal. Ordinarily, when a child under the age of three years old is removed from parental custody, reunification services are not to exceed a six-month period. (§§ 361.5, subd. (a)(1)(B), 366.21, subd. (e); see *Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 611-612 ["The stated purpose of the new six-month provisions is to give juvenile courts greater flexibility in meeting the needs of young children, 'in cases with a poor prognosis for family reunification, (e.g., chronic substance abuse, multiple previous removals, abandonment, and chronic history of mental illness).' [Citation.]"].) Section 366.21, subdivision (e), provides that if the court finds at the six-month review hearing that the parent has failed to participate and make substantive progress in his or her court-ordered treatment programs, the parent is not entitled to further services unless the court finds a substantial probability that the child will be returned to parental care within six months or that reasonable services have not been provided. However, a parent is not entitled " 'to a prescribed minimum period of services,' " (*In re Katelynn Y.* (2012) 209 Cal.App.4th

6

871, 876), and services may be terminated prior to a scheduled review hearing pursuant to section 388, subdivision (c) if the court finds "a change of circumstances or new evidence" that "[t]he action or inaction of the parent or guardian creates a substantial likelihood that reunification will not occur, including, but not limited to, the parent's or guardian's failure to visit the child, or the failure of the parent or guardian to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(A) & (B).)

In this case, no one disputes mother visited the minor. Therefore, the question is whether the evidence supports the juvenile court's finding of "a substantial likelihood that reunification will not occur" due to mother's "failure . . . to participate regularly and make substantive progress in a court-ordered treatment plan." [2] (§ 388, subd. (c)(1)(B).) Mother argues she participated regularly in the court-ordered treatment plan for 106 days and remained clean and sober until her progress was derailed by "the emotionally-wrenching experience" of having her parental rights to her two older children terminated. She notes that relapse is a "clinically well-accepted . . . regularly foreseeable event in the recovery process."

However, mother's relapse cannot be viewed in isolation. As documented in the detention report, mother's drug dependency problems dated back to 2012 after a series of tragic deaths in her family, spousal abuse, and loss of the family home. At the time the section 300 petition was filed on behalf of her two older children, mother was incarcerated for possession of a controlled substance. According to her probation officer,

---

[2] The court expressly found clear and convincing evidence that G.L.'s return to mother's custody would be detrimental to his safety, protection, and well-being; that mother had failed to participate regularly in the court-ordered treatment program; and that there was no substantial probability that G.L. would be returned to mother's custody by the next review hearing in August 2013. The court also found, "[t]he extent of progress which mother has made toward alleviating . . . placement in foster care is none."

by the time G.L. was born, mother had been noncompliant with drug testing since November 15, 2012, which he suspected was due to drug usage.

Moreover, mother made no effort to enter a drug treatment program between December 15, 2013 and January 29, 2014, the date of her arrest on new drug-related and other charges, even though she had been given referrals by her prior program counselor and by social worker Memnon. She was released from custody just one day prior to April 4, 2014, the date of the section 388 hearing.

Mere participation in services is not an indicator of parental improvement if the parent continues his or her pattern of behavior. (*Dawnel D. v. Superior Court* (1999) 74 Cal.App.4th 393, 398, disapproved on other grounds in *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 848.) The sum total of the record before us supports the juvenile court's findings that participation in a treatment program for 106 days, followed by relapse, positive drug tests, and incarceration for drug-related and other charges, proved by clear and convincing evidence that mother failed "to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(B).) The evidence further supports the court's findings that mother had made *no* progress in alleviating the causes of the dependency, and consequently, that there was no likelihood mother would be able to reunify with G.L. by the six-month review hearing. No abuse of discretion appears.

Citing *In re Kimberly F.* (1997) 56 Cal.App.4th 519 and *In re B.D.* (2008) 159 Cal.App.4th 1218, mother also argues the court abused its discretion because CFSB failed to prove that modification was in the G.L.'s best interests. Again, we disagree.

"In evaluating whether the petitioner has met his or her burden to show changed circumstances, the trial court should consider: '(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the

8

degree to which it actually has been.' " (*In re B.D., supra*, 159 Cal.App.4th at p. 1229, quoting *In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.)

The record below demonstrates mother's ongoing substance abuse problem, which led to the dependency, was very serious, and the reason for the continuation of the problem was her inability or unwillingness to submit to long-term drug treatment. The degree to which the problem had been actually ameliorated was none, and the problem so far appeared to be intractable for the foreseeable future.

As for the bond between mother and child, G.L. had been removed from mother's custody shortly after his birth on August 15, 2013. Between October 2, 2013 and January 22, 2014, mother had seven supervised visits with her son. Mother missed two scheduled visits in February 2014. It is true the social worker described mother's behavior during the early visits as nurturing, affectionate, and attentive. However, the social worker also noted that mother tended to get distracted from the visits by taking photos of the baby to send to possible fathers, and used visit time to seek advice from the social worker about paternity and child support issues. A visit on December 18, 2013 had to be cancelled because she was 40 minutes late and under the influence of an intoxicating substance. She tested positive for amphetamines that day. On January 8, 2014, she appeared at a visit in an unkempt condition, displaying signs of being under the influence, and the visit proved difficult and awkward. In CFSB's memorandum for the April 4, 2014 hearing, Memnon observed: "[C.L.] is happy and somewhat attentive to [G.L.] during their visits. [G.L.], however, tends to be somewhat apprehensive in response to his mother. He often looks away from her and sometimes cries. At times, he smiles to her and wants to engage but his mother does not quite interpret his cues." This evidence does not suggest that a strong parent-child bond had been forged between mother and G.L. Under the test set forth in *Kimberly F.* and *D.B.*, the juvenile court did not err in granting CFSB's section 388 motion.

Finally, citing *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, mother seems to suggest the court "reflexively" denied her a meaningful chance to reunify because of her prior dependency history. (*Id.* at p. 1464.) In our view, this is not such a case. On the contrary, the record demonstrates CFSB and the court bent over backwards to afford mother a second chance at parenting. The court did not abuse its discretion in ultimately finding that termination of reunification services was in this very young minor's best interests.

## DISPOSITION

Mother's petition for an extraordinary writ is denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.) The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).) Mother's request to stay the hearing under section 366.26 is denied.


_____
Dondero, Acting P.J.


We concur:


_____
Banke, J.


_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.