Filed 7/15/13  R.H. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.H., | |
| Petitioner, | E058618 |
| v. | (Super.Ct.No. SWJ009201) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition denied.

Daniel L. Vinson for Petitioner.

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Real Party in Interest.

1

Petitioner R.H. (Mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order terminating reunification services as to her one-year-old son I.H. and setting a Welfare and Institutions Code section 366.26[1] hearing at the six-month review hearing.[2] Mother argues that services should have been continued since she participated regularly and made substantive progress in her case plan and there was a substantial probability that the child may be returned to her care if provided with additional services. We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father had an "on and off" relationship, which included a history of domestic violence, anger issues, unresolved mental health issues, and two prior dependency cases resulting in the termination of parental rights as to their two older children.[3] Additionally, Mother had a criminal history for assaulting Father, resulting in a criminal conviction. Father also had a criminal history for assaulting Mother in 2008 and 2011, resulting in two criminal convictions, as well as numerous theft-related arrests

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] D.H. (Father) is not a party to this appeal.

[3] In the first dependency case, the parents received about 16 months of services. In the second dependency case, the parents were denied services pursuant to section 361.5, subdivision (b)(10).

and convictions. Both parents were on probation for domestic violence offenses; Mother until June 2014 and Father until February 2014.

The parents' third child, I.H. (the child) came to the attention of the Riverside County Department of Public Social Services (DPSS) following the child's birth in June 2012 when Mother told hospital staff that she did not have enough money to feed herself, the baby, and Father. It was also reported that Mother had made comments hoping to keep "this baby because CPS has taken her other children."

In an interview with DPSS, Father acknowledged that he did not have money to buy food; that he was unemployed and worked irregularly cleaning windows; that he suffered from depression and bipolar; and that he saw a therapist twice a week. Mother stated that she lived in a home alone; that she received $855 per month in "SSI" benefits; that her rent was $177 a month; and that she had sufficient items for the baby. Mother also reported that she was not under the care of a doctor or therapist; that she was not taking any medication for her depression and anxiety; and that she was enrolled in a 52-week domestic violence program. She believed that her mental health issues did not affect her ability to parent or that she required medication. The parents also reported that there were no recent incidents of domestic violence between them and that both had been arrested in the past for domestic violence.

On July 3, 2012, a petition was filed on behalf of the child pursuant to section 300, subdivision (b) (failure to protect). At the detention hearing, the child was formally removed from his parents and placed in foster care. The parents were offered services

and visitation.  The parents were ordered to attend counseling and complete a psychological assessment and medication evaluation.

The social worker subsequently spoke with the parents and provided them with referrals for counseling, mental health services, a parenting program, and a medication evaluation.  The parents were cooperative and participating in counseling and anger management services, but still had not participated in a medication evaluation or parenting program.  In addition, the parents were regularly visiting the child and the visits appeared to be going well.

The jurisdictional/dispositional hearing was held on September 6, 2012.  The social worker recommended that the allegations in the petition be found true and that reunification services be denied to the parents pursuant to section 361.5, subdivisions (b)(10) and (b)(11).  The juvenile court found the allegations in the petition true as amended and declared the child a dependent of the court.  The court found that the parents had made "substantial efforts to address the issues that brought the case to the court" and offered them reunification services.  The court also authorized unsupervised day visits if the parents complied with their case plan and made progress.  Mother's case plan required her to participate in general counseling, submit to a medication evaluation and follow the recommendations and medication prescribed by the psychiatrist, submit to a psychological evaluation, and complete a parenting program.

Mother was evaluated by a therapist in August 2012 and diagnosed with Major Depressive Disorder, which affected her mood and energy and made it difficult for her to complete her daily tasks and have positive relationships with others.  She had completed

4

her parenting classes and was regularly attending her individual counseling sessions. Her therapist reported that she appeared "positive," "upbeat," and motivated "to learn and work on herself." Her therapist acknowledged that Mother had anger issues especially when she felt overwhelmed and that Mother was "'still working on [her] anger.'" Her therapist was working with Mother on "'being patient'" in the counseling sessions and had not seen any anger outbursts by Mother.

Mother sought a medication evaluation on December 15, 2012. However, the social worker was unable to obtain the Mother's evaluation as of September 2013, because Mother had not signed a medical release despite the social worker's repeated requests. Mother also underwent a psychological evaluation on December 29, 2012, and was diagnosed with a number of disorders. The psychologist found that Mother had learning disabilities and mental health issues that impacted her ability to parent. The psychologist reported that Mother's tests showed that Mother desired "'to escape from her problems and stay in a childlike state of dependence'" and that her "'methods of problem solving are superficial and unconvincing.'" He further noted that Mother "'could easily become involved in domestic violence again to the detriment and danger of any child in her care'"; that tensions between her and Father still existed; that Mother had no depth or insight into past problems; and that Mother had problems "'which would not easily (if at all) be corrected by short term therapy or classes offered by [CPS].'"

Father's therapist noted that Mother and Father continued to have a "'very volatile relationship'" and that they were "'mutually' argumentative." Father's therapist did not believe the child should be returned to the parents' care. Father's psychologist found that

5

Father could not care for the child, noting "'[i]t would be overtly detrimental to place a child with him.'" Father was diagnosed with paranoid schizophrenia, had stopped taking his medication, and had chronic auditory hallucinations and delusions. His tests revealed that he had a "'very heightened degree [of] anger'" and "'a high potential of physically abusing children.'"

The parents had consistently been visiting the child together twice a week for two hours. The visits were reported as being "'good,'" but that Mother at times did not know how to respond to the child's needs and had to prompt Father to interact with the child. Father reported that he did not believe they were capable of caring for the child and appeared to have no interest in him as evidenced by his lack of interaction with the child at visits. He also believed that the child was "'better off'" in foster care and that he was being pressured by Mother.

Mother remained in a relationship with Father, and confirmed that she intended to continue the relationship. Mother reported that she felt that she had "'learned how to deal with [her] anger in lots of different ways and how to express [her]self.'" She also believed that she had benefitted from her parenting classes and counseling by being able to take care of the child without "tension" and placing him first without domestic violence. She further believed that Father had been interacting positively with the child; and that she really had no mental health issues but anger and domestic violence issues that had been resolved.

The social worker noted that although Mother had been compliant in her case plan, she appeared to be "limited in her ability to benefit from the services." The social worker

6

further noted that Mother continued to have unresolved mental health needs and expressed concern about Mother's volatile relationship with Father. The social worker therefore recommended terminating the parents' services and setting a section 366.26 hearing.

The contested six-month review hearing was held on April 23, 2013. Following argument from counsel, the juvenile court found that although Mother was "actively participating" in her services, she was not "capable of learning anything and actually making the improvements that are necessary to have [the child] returned to her." The court also found that the parents had not made substantive progress in their case plan and that there was no substantial probability the child could be returned to either parent's care if given an additional six months. The court thereafter terminated reunification services to both parents and set a section 366.26 hearing.

## II

## DISCUSSION

Mother argues that her services should have been continued since she participated regularly in her case plan, made substantive progress, and there was a substantial probability the child could be returned to her care if given additional services.

Ordinarily, when a child under the age of three years is removed from parental custody, reunification services are not to exceed a six-month period. (§§ 361.5, subd. (a)(2), 366.21, subd. (e).) In establishing the six-month provision, the Legislature intended "to give juvenile courts greater flexibility in meeting the needs of young children, 'in cases with a poor prognosis for family reunification, (e.g., chronic substance

7

abuse, multiple previous removals, abandonment, and chronic history of mental illness).' . . . '[V]ery young children . . require a more timely resolution of a permanent plan because of their vulnerable stage of development. . . . [G]iven the unique developmental needs of infants and toddlers, moving to permanency more quickly is critical.' [Citation.]" (*Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 611-612.)

Section 366.21, subdivision (e), provides that if the court finds at the six-month review hearing that the parent has failed to participate and make substantive progress in his or her court-ordered treatment programs, the parent is not entitled to further services unless the court finds a substantial probability that the child will be returned to parental care within six months or that reasonable services have not been provided.

In reviewing the factual findings of the dependency court, "we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

The record shows Mother regularly participated in all aspects of her case plan. However, that is not enough. Section 366.21, subdivision (e), requires that the juvenile court find both regular participation and substantive progress. Although availing oneself of the services and technical compliance with one's case plan is an important consideration with respect to the juvenile court's decision to continue or terminate

reunifications, it is not determinative. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141-1142.) Rather, the court's decision turns on whether the parent's progress has eliminated the conditions leading to the child's placement out of the home. (*Ibid.*) Moreover, substantive progress implies real rather than apparent progress and real progress implies progress that can be sustained. If the purpose of the reunification plan is family preservation, then the court must be able to find that the offending parent resolved the problem necessitating the child's removal and that the parent can provide for the child's safety and well-being. (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343-1345.)

Thus, the issue before us is whether Mother made substantive progress in alleviating the causes that led to the child being placed in foster care—namely, her mental health issues and domestic violence issues between Mother and Father. Our review of the record shows that substantial evidence supports the court's finding that Mother failed to make substantive progress notwithstanding her regular participation in her court-ordered treatment plan. Mother appeared to be limited in her ability to benefit from services and continued to have unresolved mental health needs. Her psychologist reported that Mother desired "'to escape from her problems and stay in a childlike state of dependence'" and that her "'methods of problem solving are superficial and unconvincing.'" Her psychologist found that Mother had learning disabilities and mental health issues that impacted her ability to parent, noting Mother "'could easily become involved in domestic violence again to the detriment and danger of any child in her care.'" Her psychologist also found that tensions between Mother and Father still

9

existed; that Mother had no depth of insight into past problems; and that Mother had problems which could not be corrected by short term therapy or services offered by DPSS, if at all. Mother's therapist acknowledged that Mother had anger issues especially when she felt overwhelmed and that Mother was "'still working on [her] anger.'" It was unknown whether medication could assist Mother in overcoming her mental health issues since the social worker was unable to have access to her medication evaluation.

Moreover, it was apparent that Mother remained in a relationship with Father, who had severe mental health issues and was a danger to any child. Despite Father's mental health issues and his desire to not parent the child, Mother intended to continue in a relationship with Father. The record shows that Mother continued to pose a risk to the child because she had not made substantive progress with her longstanding mental health issues and continued a volatile relationship with Father. A parent who fails to make substantive progress continues to represent a risk to the child. (See § 366.21, subd. (e).)

Although a parent is not required to comply perfectly with the service plan, termination of services after six months is appropriate if the parent has failed to perform adequately in the most crucial aspects of the plan. (*Dawnell D. v. Superior Court* (1999) 74 Cal.App.4th 393, 397-398. ["dismal performance" on crucial aspect of reunification plan sufficient to support finding parent failed to make substantive progress], disapproved on other grounds in *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 848.) Mere participation in services is not an indicator of parental improvement if the parent continues his or her pattern of behavior. (*Id*. at p. 398.) From the inception of the case, despite evidence to the contrary, Mother believed that she did not have any mental health

issues or that she required medication. By the time of the six-month review hearing about 10 months later, Mother continued to state that she did not have mental health issues requiring medication, and the real problem was her anger issues and domestic violence between her and Father, which she believed had been resolved. In sum, although Mother was positive and motivated to work on her issues, Mother still had unresolved mental health and anger issues after she had almost 16 months of services in the first dependency case and nine months of additional services in this dependency case. The inescapable conclusion from this track record is Mother had not made substantive progress. We find no error in the juvenile court's finding Mother failed to make substantive progress in her court-ordered services.

Mother also contends the juvenile court erred in terminating services and setting the section 366.26 hearing because there was a substantial probability of the child's return to her custody by the 12-month review date. We disagree.

As indicated above, when a child under the age of three years is removed from the family home and the parent does not make substantive progress in his or her case plan within the first six months, the parent is not entitled to further reunification services unless the court finds a substantial probability that the child will be returned to parental care within six months or reasonable services have not been provided. (§ 366.21, subd. (e).) The parent bears the burden of showing a substantial probability of return of the child. (*Ibid*.)

In determining whether reunification is probable within six months, courts consider three factors: whether the parent has consistently visited the child (§ 366.21,

11

subd. (g)(1)(A)); whether the parent has made substantial progress in resolving the problems that led to removing the child (§ 366.21, subd. (g)(1)(B)); and whether "[t]he parent . . . has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(C).) All three factors are required to support a finding that there is a substantial probability that the children will be returned to parental custody within six months. (§ 366.21, subd. (g)(1).)

As indicated above, on appeal, we must defer to the factual determinations of the juvenile court. It is not our function to redetermine the facts. As long as the court's decision was supported by substantial evidence, we must affirm. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198-200.)

Although Mother maintained regular visitation and contact with the child (§ 366.21, subd. (g)(1)(A)), she had not met her burden to demonstrate the remaining two requirements of section 366.21, subdivision (g)(1), had been satisfied. At the time of the six-month review hearing on April 23, 2013, Mother had a little over two months until the 12-month review hearing was required to be held pursuant to section 366.21, subdivision (f). Accordingly, Mother would have had to effectively eliminate her mental health and anger issues in a little over two months. The record clearly shows that Mother could not show a substantial probability of return of the child if given two months of additional services. As to the second prong—making substantial progress toward eliminating the conditions that led to the removal of the child from the home (§ 366.21, subd. (g)(1)(B))—as noted above, we have determined there was substantial evidence

12

that Mother had not met this requirement. The child was removed from the home because of unresolved mental health issues and domestic violence between Mother and Father. Notwithstanding over two years of services in two dependency cases, Mother still had no depth or insight into past problems and was still working on her anger issues. In addition, tensions still existed between Mother and Father and she "'could easily become involved in domestic violence again to the detriment and danger of any child in her care.'"

There also was substantial evidence that Mother had not satisfied the third requirement—demonstrating the capacity and ability to complete the objectives of her case plan and provide for the safety and well-being of the child. (§ 366.21, subd. (g)(1)(C)). The court had sufficient cause to question Mother's capacity to meet the objectives of her case plan and to provide for the child's safety and well-being. Despite intensive services, as the juvenile court found, Mother was still not "capable of learning anything and actually making the improvements that are necessary to have [the child] returned to her." {RT 7-8}

We conclude there was no substantial probability that the child would be returned to Mother's custody by the time of the 12-month review hearing. Thus, the court properly terminated services.

13

III

DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                                    P. J.

We concur:

HOLLENHORST
                    J.

KING
                    J.

14