Filed 1/21/14  In re A.B. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | |
| J.V.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A140098<br><br>(Contra Costa County<br>Super. Ct. No. J12-01257) |

**I.**

**INTRODUCTION**

J.V. (mother) seeks extraordinary writ review (Cal. Rules of Court, rule 8.452) of the juvenile court's orders issued at a contested six-month review hearing terminating her reunification services, and setting a section 366.26 hearing for February 5, 2014, to determine a permanent plan for her one-year-old daughter, A.B. (the minor).  (See Welf.

1

& Inst. Code, § 366.21, subd. (e).)[1] Mother argues the juvenile court erred in ruling that (1) there was not a substantial probability of return of the minor within the next six months; (2) visits between mother and the child should be suspended; and (3) reasonable reunification services were provided. We deny the petition on its merits.

## II.

## FACTS AND PROCEDURAL HISTORY

The minor came to the attention of the Contra Costa County Children and Family Services Bureau (the Bureau) when she was born prematurely in 2012. Mother came to her first prenatal appointment a few days before the minor's birth, and tested positive for methamphetamine use. While at the hospital, mother admitted using methamphetamine but claimed she did not need drug treatment because she could stop using if she wanted to stop. The minor was detained and placed in a foster home shortly after her birth.

On September 6, 2012, at an uncontested hearing, the juvenile court sustained the dependency petition, alleging mother's drug use impaired her ability to care for the minor. (§ 300, subd. (b).) Mother tested positive for methamphetamine use in a court-ordered test that same day. The court ordered mother to complete a plan of reunification, which included drug treatment and random drug testing, parenting instruction, and individual counseling.

Mother entered a residential drug treatment program on September 11, 2012. The program was scheduled to last 90 days, with the option of a 30-day extension or longer.

---

[1] All statutory references are to the Welfare and Institutions Code, and rule references are to the California Rules of Court. Where, as here, the minor was under three years of age on the date of her initial removal from a parent's custody, the court may terminate reunification services at the six-month review hearing and schedule a section 366.26 hearing if the court "finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 366.21, subd. (e).) "If, however, the court finds there is a substantial probability that the child, who was under three years of age on the date of initial removal . . . may be returned to his or her parent . . . within six months . . . the court shall continue the case to the 12-month permanency hearing." (*Ibid.*)

Mother did well in the program, and on October 18, 2012, the minor was released to mother's care while mother was still a resident of the drug treatment program.

After completing 90 days of inpatient treatment, mother left the program on December 10, 2012, with the minor. However, once in the community, she failed to engage in any substance abuse aftercare treatment. On January 31, 2013, the minor was again removed from mother's care and placed in foster care due to mother's continued methamphetamine use. Mother missed two drug tests in December 2012, and tested positive for methamphetamine use on January 18, January 28, February 5, February 22 and February 28, 2013.[2] Mother reported the reason she tested positive was that she was using over-the-counter ibuprofen and/or cold medications. On February 21, the court sustained a supplemental petition pursuant to section 387 pertaining to mother's positive drug tests and failure to engage in her family maintenance plan.

In a report prepared for the six-month review hearing, the Bureau recommended terminating mother's reunification services and setting a section 366.26 hearing. The social worker's report detailed the recent results of mother's substance abuse testing. Mother had missed two tests in February, four tests in March, four tests in April, and two tests in May. She tested positive for methamphetamine use on January 18, January 28, February 5, February 22, February 28, April 25, May 1 and May 15. She had not tested at all during the months of June, July and August. Mother had also failed to participate in substance abuse treatment during this period of time.

On October 23, the court held a contested six-month review hearing. During her testimony, mother acknowledged she had "waited too long to start doing what I'm supposed to do at the last minute," but she indicated she was now starting services. She testified she had almost completed parenting classes, was attending substance abuse meetings, and had been calling residential drug treatment programs seeking admission.

The juvenile court noted the "several positive tests" during the course of the dependency, and asked mother if she used drugs, mother responded "[n]o." Likewise,

_____

[2] Unless specified otherwise, all future dates are in 2013.

3

when the court asked mother the last time she used drugs, mother responded "Honest truth, I've never." When the court inquired if mother had a substance abuse problem, mother responded "[n]o." The court then commented that "you appear to me today to be under the influence." Mother denied this, testifying "[i]t's because I'm a little bit nervous being up here." The court ordered mother be drug tested during a break in the hearing. Mother tested positive for methamphetamine use.

At the hearing's conclusion, the court terminated reunification services and set this matter for a section 366.26 hearing on February 5, 2014. In refusing to extend reunification services, the court indicated, "I don't believe there's even any probability that the child could be returned to you safely in six months. You haven't even gotten off square one to acknowledge that you have a problem let alone begin to address the problem." The court also suspended visitation between mother and the minor, but indicated if "mother starts to test and she shows . . . she's not under the influence," the court would reconsider its decision. Mother filed this writ challenging these determinations.

## A. Evidence Supporting Termination of Services and Scheduling a Section 366.26 Hearing

Mother first argues that the court erred in terminating reunification services and scheduling a section 366.26 hearing because there was a substantial probability the minor may be returned to her within six months. The findings of the juvenile court made pursuant to section 366.21 are reviewed under the substantial evidence test. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020.) All conflicts in the evidence are resolved in favor of the finding, order, or judgment of the lower court, and all reasonable inferences are made in support thereof. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 (*Katrina C.*).)

A court abuses its discretion in setting the section 366.26 hearing if the record establishes that "there is a substantial probability the child may be returned to the parent [within six months], in which case the court must continue the case to the 12-month hearing." (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 179-180, italics omitted.)

4

In determining "substantial probability" of return within the applicable time period, the juvenile court "should consider the following factors along with any other relevant evidence: [¶] a. Whether the parent . . . has consistently and regularly contacted and visited the child; [¶] b. Whether the parent . . . has made significant progress in resolving the problems that led to the removal of the child; and [¶] c. Whether the parent . . . has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health, and special needs." (Rule 5.710(c)(1)(D)(i).)

In claiming she met this criteria, mother points out she "had been regularly and consistently visiting with her daughter," and that early in the dependency process, she "successfully completed a court-ordered treatment program." Also, during mother's testimony, she outlined the steps she was taking to start complying with her reunification plan, such as participating in a parenting class, although she admitted she had "waited too long to start doing what I'm supposed to do at the last minute."

However, mother wholly ignores the minimal progress she has made throughout the minor's dependency in addressing her drug abuse issues, which served as the basis for the court's jurisdictional order. Mother continued to test positive for methamphetamine use throughout the minor's dependency. Moreover, she frequently missed drug testing (the functional equivalent of a positive test). Most importantly, the record shows that mother's insight into the gravity of her addiction was essentially unchanged from the commencement of the minor's dependency. Despite having participated in a residential substance abuse treatment program and having the minor once again removed from her custody after she relapsed, mother was still unwilling to face up to the fact, let alone the severity, of her addiction. During her testimony, she continued to deny that she had ever used methamphetamine. The juvenile court found her denials not credible, and the court's skepticism was confirmed by drug testing which revealed mother was appearing in court under the influence of methamphetamine. "Such a dismal performance in the most crucial aspect of the reunification plan can hardly be viewed as regular participation

5

in services." (*Dawnel D. v. Superior Court* (1999) 74 Cal.App.4th 393, 398, disapproved on other grounds in *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 848.)

Mother's continued drug use after the dependency was initiated, her failed rehabilitation, and her failure to take responsibility for her recent use provided substantial evidence supporting the court's finding that it was not substantially probable that the minor could be returned to her custody within six months. Accordingly, we conclude the court's denial of further reunification services and the scheduling of a section 366.26 hearing is amply supported by this record.

## B. Adequacy of Reunification Services

Mother next argues that the evidence was insufficient to support the court's finding that the reunification services she received were adequate. She claims the services offered were not reasonably tailored to assist her because "the only thing [the Bureau] did to address the mother's methamphetamine relapse . . . was give the mother the names and numbers of some drug programs, and directed her to call to seek admission."

"[W]ith regard to the sufficiency of reunification services, our sole task on review is to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered. [Citations.]" (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) "We construe all reasonable inferences in favor of the juvenile court's findings regarding the adequacy of reunification plans and the reasonableness of [the Bureau's] efforts." (*In re Julie M.* (1999) 69 Cal.App.4th 41, 46.)

At the outset, we note that mother failed to challenge the adequacy of the reunification services offered in a timely fashion. "If Mother felt during the reunification period that the services offered her were inadequate, she had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan[.]" (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416.) A parent may not "wait silently by until the final reunification review hearing to seek an extended reunification period based on a perceived inadequacy in the reunification services occurring long before that hearing.

6

[Citation.]" (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1997) 60 Cal.App.4th 1088, 1093.) Although mother was represented by counsel throughout these proceedings, she did just that, waiting until after reunification services were terminated and the matter was before this court on a writ petition to raise this issue. Mother has waived the issue by failing to object below.

Even if we were to consider mother's untimely argument on the merits, the record amply supports the trial court's ruling that "by clear and convincing evidence that [the Bureau] has provided or offered mother reasonable services which were designed to aid her in overcoming the problems which led to the initial removal." The proper focus of reunification services is to eliminate the conditions that led to the trial court's jurisdictional finding. (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1474.) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.)

Substantial evidence demonstrates the Bureau's efforts were more than reasonable. Mother fails to acknowledge that she voluntarily ceased efforts to comply with her reunification plan for a significant portion of the review period and only started making last-minute strides when termination of reunification services was imminent. Reunification services are voluntary, and the social worker is not required to "take the parent by the hand and escort [her] to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) In this case, the record reflects that the Bureau complied with its obligation to provide services, but mother failed to take advantage of the services offered to her.

### C. Suspension of Visitation

Mother also challenges the juvenile court's order suspending her supervised visitation with the minor but keeping open the possibility of reinstatement if she could establish a pattern of testing clean for drugs. She contends the juvenile court abused its

discretion in suspending visitation because "[t]here is no sufficient factual basis in the record to support a finding that visitation places the minor at risk of harm to her physical safety and wellbeing."

Reunification services ordinarily must include visitation, which must be "as frequent as possible, *consistent with the well-being of the child*." (§ 362.1, subd. (a)(1)(A), italics added.) Even after termination of reunification services, visits must continue unless the court determines they would be detrimental to the child. (§ 366.21, subd. (h).) In determining whether and under what conditions to order visitation, the court must balance the parents' interest in the care, custody and companionship of their children with the child's well-being. (See *In re S.H.* (2003) 111 Cal.App.4th 310, 317.) The juvenile court has broad discretion in striking this balance. (*In re Megan B.* (1991) 235 Cal.App.3d 942, 953.) In reviewing for substantial evidence, we resolve all conflicts in the evidence in favor of the court's findings. (*Katrina C.*, *supra*, 201 Cal.App.3d at p. 547.)

Ample evidence supports the court's determination that continued supervised visitation would be detrimental to the minor. Mother made virtually no progress toward alleviating her substance abuse problem, continuing to use methamphetamine right up until the contested six-month review hearing. The court put its reasoning on the record: "I will tell you what my concern is. Mom appears very obviously under the influence here in court today, and I do believe it would be detrimental to subject the child to interaction with someone who is so clearly under the influence of a central nervous stimulant. And I think it actually can pose a danger to the child."

We reject mother's suggestion that a finding of detriment based on her ongoing methamphetamine use required evidence that she engage in conduct that posted a threat to the minor's safety. The juvenile court need not wait for mother's drug use to actually harm the minor before taking action. Mother's ongoing drug use and failure to comply with her reunification plan provides a sufficient basis for the court's finding of detriment if visitation was continued.

8

## IV.

## DISPOSITION

The writ petition and request for a stay are both denied. (§ 366.26, subd. (*l*)(1); rule 8.452(h).) Given the need to proceed promptly with the hearing set for February 5, 2014, this decision is final immediately. (Rules 8.452(i), 8.490(b)(1)(A).)


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.

9