Filed 4/18/23  In re R.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.R., a Person Coming Under the Juvenile Court Law. | B318461 (Los Angeles County Super. Ct. No. 20CCJP00018B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANTONIO R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steff R. Padilla, Judge Pro Tempore. Affirmed.

Allen Korenstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling for Plaintiff and Respondent.

_____

Defendant and appellant Antonio R. (father) appeals from the final custody order (exit order) issued by the juvenile court on December 13, 2021, upon the termination of dependency jurisdiction over his daughter, R.R. (minor, born May 2014). (Welf. & Inst. Code, § 362.4.)[1]  Father contends that, because he had substantially complied with his court-ordered case plan, it was an abuse of discretion for the court to require that his visitation with minor remain monitored.  He also purports to challenge "the associated requirements [that] he complete a full drug program and individual counseling" (bolding omitted).

We affirm.

## BACKGROUND

I. *Minor Becomes a Dependent of the Juvenile Court*

On January 2, 2020, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition seeking the juvenile court's exercise of jurisdiction over

_____

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

minor and minor's half-sibling, Ra.R. (born Apr. 2009),[2] pursuant to section 300, subdivisions (a) (nonaccidental serious physical harm) and (b)(1) (failure to protect).

Counts a-1 and b-1 alleged that father and the mother of minor and Ra.R., M.R. (mother),[3] engaged in a violent altercation in minor's presence on December 20, 2019, during which father repeatedly struck mother in the face and neck area with his fist, grabbed her by her hair, and dragged her to the ground. Mother sustained facial trauma and a broken nose. Father also pushed minor twice, causing her to fall to the ground. Father then fled with minor in the family vehicle.

Count b-2 alleged that father drove a vehicle while under the influence of alcohol, with minor as a passenger. Mother knew that father was under the influence yet allowed him to drive.

On September 29, 2020, the juvenile court sustained counts b-1 and b-2 and declared minor a dependent of the court under section 300, subdivision (b)(1).[4] The court ordered minor removed from father and mother, who were granted reunification services and monitored visitation. Father's case plan consisted of random, on-demand drug testing with any missed or positive test resulting in a full drug and alcohol rehabilitation program, a 52-week domestic violence program, a parenting class, and individual counseling to address case issues.

---

[2] Ra.R. is not father's child and is not the subject of this appeal. Accordingly, we do not discuss the proceedings as they relate to him further.

[3] Mother is not a party to this appeal.

[4] The juvenile court dismissed the a-1 count brought under section 300, subdivision (a)(1).

## II. *Family Reunification Period*

According to a DCFS report from March 2021, minor had been placed with her maternal aunt, I.P. (maternal aunt). Both father and mother confirmed that they were no longer in a relationship. Father reported that he was homeless and wanted minor to be released to mother's care. Father was participating in court-ordered services and submitting to random drug testing. Father reported that he visited minor about once a week due to his work schedule. Maternal aunt, who monitored father's visits, reported that father had a good relationship with minor, who enjoyed riding her skateboard and bike with him.

In early June 2021, DCFS reported that father had completed 42 of 52 sessions of his domestic violence program, five of 20 parenting sessions, and 20 of 20 individual counseling sessions. From November 2020 to May 2021, father had submitted to 12 random drug tests, which returned negative. He had missed one test. According to maternal aunt, father's visits with minor had been sporadic. In March and April 2021, father visited minor four times. According to DCFS, minor reported being afraid that father would be present when she visited her mother's home.

## III. *Minor Is Returned to Mother's Custody*

At a hearing on July 8, 2021, the juvenile court found that mother was in compliance and her progress was substantial. The court found that father was beginning to be in compliance. Concluding that it would not create a substantial risk of detriment to minor, the court terminated the suitable placement order and returned minor to mother's custody. Minor remained a dependent of the court.

4

The juvenile court ordered family maintenance services for minor and her parents.  Father's visits were to remain monitored, with DCFS having discretion to liberalize.  The court ordered enhancement services for father and that father continue drug testing.

IV.  *Status Review Report*

According to a status review report filed by DCFS on November 24, 2021, father had completed his domestic violence program, parenting classes, and individual counseling sessions.  Between November 2020 and November 2021, father had 18 negative random drug tests and two failures to appear.  Father's visits with minor were sporadic due to his work schedule.  He visited once in July 2021, once in August 2021, twice in September and October 2021, and three times in November 2021.  Maternal aunt and minor reported that the visits were good, and minor denied being afraid to be alone with father.  Father remained homeless.

V.  *Termination of Jurisdiction and Exit Order*

On December 13, 2021, the juvenile court terminated jurisdiction and issued an exit order granting mother physical custody of minor with father and mother sharing legal custody.  The court ordered that father was entitled to at least one, four-hour monitored visit with minor per week.

As to why the juvenile court ordered only supervised visitation for father, the order indicated that father had not completed individual counseling and a drug abuse treatment program with random testing.  The order also stated:  "Father has inconsistent compliance with court-ordered random drug testing (if any test is missed or positive, then he is to participate in a full drug treatment program with random testing).  Father

5

has inconsistent participation in court-ordered monitored visitation."

VI. *Appeal*

Father filed a timely notice of appeal from the December 13, 2021, exit order.

## DISCUSSION

I. *Relevant Law*

Section 362.4 "empowers the juvenile court, if it terminates its jurisdiction over a dependent minor, to issue 'an order determining the custody of, or visitation with, the child.' (§ 362.4, subd. (a).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 862–863.) "When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' [Citations.]" (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

"If there is a pending marital or paternity proceeding relating to the child, the custody order will be transferred to the existing family court file. (See [§ 362.4], subd. (b).) Otherwise, the order may be used to open a new file in the superior court of the county in which the parent who has been given custody resides. (See [§ 362.4], subd. (c).) The order shall continue 'until modified or terminated by a subsequent order of the superior court.' ([§ 362.4], subd. (b).)" (*In re C.W.*, *supra*, 33 Cal.App.5th at p. 863.)

"[T]he juvenile court's section 362.4 custody orders . . . (commonly referred to as 'exit orders') may not be modified by the family court 'unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best

6

interests of the child.'" *(In re Anna T.* (2020) 55 Cal.App.5th 870, 871–872 *(Anna T.*).)

II. *Standard of Review*

We review an exit order for abuse of discretion.  *(In re C.W., supra,* 33 Cal.App.5th at p. 863.)  Under that standard, we may not disturb the order "unless the court made an """arbitrary, capricious or patently absurd determination.""" [Citation.]" *(Ibid.)*

III. *The Juvenile Court Did Not Abuse Its Discretion in Requiring Monitored Visitation for Father*

In finding jurisdiction, the juvenile court had previously sustained allegations—unchallenged on appeal—that on December 20, 2019, father repeatedly struck mother, grabbed her by her hair, and dragged her to the ground, causing her to sustain facial trauma and a broken nose.  Father also pushed minor twice, causing her to fall to the ground.  Father then fled with minor in the family vehicle while under the influence of alcohol.

During the family reunification and maintenance periods, father commendably completed his court-ordered domestic violence program, parenting classes, and individual counseling sessions.[5]  Between November 2020 and November 2021, father submitted to 18 random drug tests, which returned negative.  But he failed to appear for two tests.  These missed tests could "properly [be] considered the equivalent of a positive test result[.]" *(In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217.)  And, the case plan for father dictated that any missed test would result in father being required to participate in a full drug

---

[5]     As DCFS concedes, the exit order erroneously indicates that father had not completed individual counseling.

7

and alcohol rehabilitation program, which he did not do. While father's monitored visits with minor reportedly went well, they were inconsistent and father never progressed to unmonitored visitation despite DCFS having discretion to liberalize.

Under the totality of these circumstances, we cannot say that ordering that father's visitation with minor remain monitored was an arbitrary, capricious, or patently absurd determination. The juvenile court could reasonably remain concerned about minor's safety and well-being if she were to be alone with father, particularly given the violence father had perpetuated upon both mother and minor less than two years earlier. Although no concerns arose when father visited minor in a monitored setting, father's conduct during an unmonitored visit was untested. Maintaining the monitor restriction on visitation was thus well within the juvenile court's discretion.

Urging reversal, father argues that he had "substantially complied with the requirements of his case plan and made substantive progress." He contends that "substantial compliance with [the] drug testing component of [a] reunification plan is compliance" and that he was "not required to demonstrate perfect compliance." The cases father cites for these propositions—*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 and *Dawnel D. v. Superior Court* (1999) 74 Cal.App.4th 393, disapproved of by *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836—are inapposite, as both dealt with challenges from the termination of reunification services and not, as here, whether monitored visitation was an abuse of discretion. Father points us to no authority—nor are we aware of any—dictating that upon substantial compliance with a case plan a parent must be granted unmonitored visitation. To the contrary, "[w]hen the

8

juvenile court makes custody or visitation orders as it terminates dependency jurisdiction, it does so as a court with 'a special responsibility to the child as *parens patriae* and [it] must look to the totality of a child's circumstances when making decisions regarding the child.' [Citation.]" (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.)

IV. *Father's Challenge to the "Associated Requirements" of the Exit Order Is Not Cognizable*

In addition to seeking reversal of the exit order's "monitor restriction on [his] visitation," father also challenges "the associated requirements [that] he complete a full drug program and individual counseling" (bolding omitted). But the order appealed from—the December 13, 2021, exit order—does not contain such requirements. Rather, the references to a drug treatment program and individual counseling appear in the portion of the exit order explaining *why* the court ordered only supervised visitation; it is not an independent order that he complete such programs.

The court-ordered case plan from September 29, 2020, was no longer in effect when the juvenile court terminated its jurisdiction on December 13, 2021. (See *Anna T.*, *supra*, 55 Cal.App.5th at p. 879 ["orders of the juvenile court regarding custody and visitation are effective only while that court exercises its jurisdiction over the child"].) To the extent father is attempting to challenge orders from that case plan, such an appeal is moot. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 ["As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot"].)

9

## DISPOSITION

The December 13, 2021, exit order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT